**UNITED STATES v. SCHWARTZ et al.**

No. 364.

Circuit Court of Appeals, Second Circuit.

July 17, 1945.

Writ of Certiorari Denied Oct. 22, 1945.

See 66 S.Ct. 97.

James Dempsey, of White Plains, N. Y. (Bartholomew A. Moynahan, of New York City, and Sidney Fischman, of Spring Valley, N. Y., of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City (John C. Hilly, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The appellant was indicted with four other defendants but was the only one against whom the case went to trial, a severance having been granted as to the defendant Colonna and three other defendants having pleaded guilty. One of the three, James Stegman, became a witness for the prosecution and testified as to the appellant's participation in the crimes charged; the other two, Florindo Isabella and Jack Kaps, did not testify. It was stipulated, however, that Kaps was willing to do so but, if called, would be unable to identify the appellant. Schwartz did not takes the stand and did not offer any proof; he rested at the conclusion of the Government's case. The jury found him guilty on both counts of the indictment, and the court imposed a sentence of ten years on count one and two years on count two to run consecutively.

Count one of the indictment charged the defendants with violating 18 U.S.C.A. § 409 by stealing from a Mack truck 495 cases of Scotch whiskey "moving as a part of a foreign shipment of freight consigned by James Martin & Co., Ltd., Leith, Scotland, to McKesson & Robbins, Inc., at No. 111 Eighth Avenue, New York, N. Y." Count two of the indictment charged a conspiracy by the defendants to meet in Hoboken, New Jersey on August 3, 1942 for the purpose of boarding a Hoboken-West Twenty-Third Street ferry, holding up the Mack truck carrying the whiskey described in count one, kidnapping its drivers, stealing the whiskey, and concealing it in a garage owned by the defendant Jack Kaps in Brooklyn, N. Y.

At the trial evidence was presented which would justify the jury in finding that the following facts were established. James Martin & Co., Ltd., Leith, Scotland, shipped 1000 cases of Scotch whiskey under a bill of lading providing for delivery at the Port of New York, running to the Manufacturers Trust Company, or its assigns, and bearing the notation, "Notify McKesson & Robbins, Inc., 111 Eighth Avenue, New York, N. Y." The cases were invoiced to McKesson & Robbins. Before the arrival of this whiskey on the steamer at Hoboken, New Jersey, McKesson &

Robbins had paid the Manufacturers Trust Company, and the latter had assigned the bill of lading to them. McKesson & Robbins had also paid the freight charges but not the customs duty and taxes on the shipment. On the morning of August 3, 1942 McKesson & Robbins sent a bonded Mack truck operated by two of its employees to Pier 1 in Hoboken to pick up 495 cases of the whiskey and deliver them to its bonded warehouse at 111 Eighth Avenue, New York. It had previous to this date picked up 500 cases. The remaining five cases were kept out to go into the Public Stores for examination by Government appraisers. The 495 cases were loaded on the truck which then proceeded to the Hoboken-West Twenty-Third Street Ferry. It was followed aboard the ferry-boat by an automobile occupied by the defendants Schwartz, Isabella and James Stegman. When the ferry reached its slip at Twenty-third Street in New York City, the two men who were driving it were held up by Schwartz and Isabella at the point of revolvers, and were forced, after leaving the ferry, to stop the truck and get into the automobile in which Stegman had followed the truck. Stegman then drove the truck to Kaps' garage in Brooklyn, where the whiskey was unloaded. The empty truck was driven back to New York and abandoned. In the meantime Schwartz and Isabella had held the two truck drivers in captivity in some unidentified building.

■ The main contention of the appellant is that the trial court erred in not directing a verdict of acquittal because the Government's uncontradicted proof showed that when the whiskey was stolen it was no longer moving as part of a foreign shipment of freight. The argument is that when delivery was made and accepted by McKesson & Robbins at Pier 1 the foreign movement in commerce came to an end, even though the whiskey, which was being taken to a bonded warehouse by a bonded truck, was still subject to the control, if not the actual custody, of the customs officials. The Government answers, relying upon United States v. Erie R. Co., 280 U.S. 98, 50 S.Ct. 51, 74 L.Ed. 187, that the intention of the foreign shipper was to have the whiskey delivered to McKesson & Robbins at 111 Eighth Avenue, New York City and consequently the transportation by truck was in fact a part of foreign commerce. None of the cases cited by either side is precisely in point. But we find it unnecessary to decide this disputed issue. If the whiskey, when stolen, was not moving in foreign commerce, it was clearly moving in interstate commerce; and the same statute covers either situation. The indictment completely described the facts which made up the charges against the defendants and the variance between the allegation that the whiskey was "moving as a part of a foreign shipment of freight" and the proof that it was part of an interstate shipment could not possibly have surprised or misled the appellant. See Berger v. United States, 295 U.S. 78, 82, 55 S. Ct. 629, 79 L.Ed. 1314; Meyers v. United States, 2 Cir., 3 F.2d 379, 380; United States v. Cohen, 2 Cir., 145 F.2d 82, 89. His counsel suggests that he relied on the Government's failure to prove the allegation of a movement in foreign commerce in advising his client not to take the stand. If so, he merely chose to take his chance on a question of law rather than to dispute facts which showed a plain violation of the statute. The record does not disclose the least reason for supposing the appellant would have taken the stand, however the indictment had read.

■ The alleged error in the charge merits little discussion. Direct testimony as to the appellant's complicity in the conspiracy was given by James Stegman and his brother William, who was also one of the conspirators but was not indicted. James Stegman also testified to the appellant's participation in holding up the truck on the ferry. The parties disagree as to whether there was any corroboration of the testimony of these accomplices; but corroboration is not essential. United States v. Mule, 2 Cir., 45 F.2d 132, 133; Bosselman v. United States, 2 Cir., 239 F. 82, 85. The court instructed the jury to scrutinize the testimony of accomplices "with care and caution, and give it such weight as you think it is entitled to." This was an adequate charge on the subject. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168; Tuckerman v. United States, 6 Cir., 291 F. 958, 963, certiorari denied 263 U.S. 716, 44 S.Ct. 137, 68 L.Ed. 522. It is an extraordinary contention that reversible error was committed by a refusal to charge in the precise language of the appellant's request, namely, that the jury "must scrutinize with special care the testimony of one who is an accomplice." Nor is there any merit in

the criticism leveled at the court's remarks, to which no exception was taken at the trial, concerning the likelihood of the truth or falsity of James Stegman's testimony.

Judgment affirmed.