**UNITED STATES v. ON LEE.**

No. 140, Docket 22541.

United States Court of Appeals Second Circuit.

Argued Jan. 8, 1953.

Decided Feb. 5, 1953.

Writ of Certiorari Denied April 13, 1953.

See 73 S.Ct. 798.

Gilbert S. Rosenthal, New York City, for appellant.

Myles J. Lane, U. S. Atty., New York City, Robert Martin, Asst. U. S. Atty., New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

SWAN, Chief Judge.

This is an appeal by the movant from the denial of a motion pursuant to Rule 33 of the Rules of Criminal Procedure, 18 U.S.C.A., for a new trial on the ground of newly discovered evidence. The appellant was convicted after a jury trial on a two count indictment.[1] His conviction was affirmed by both this court and the Supreme Court.[2] Familiarity with the facts set forth in those opinions will be assumed.

The motion for a new trial was heard upon affidavits. The new evidence relied upon is directed at impeaching the testimony of Lawrence Lee, an agent of the Bureau of Narcotics, who testified to damaging admissions of guilt made by On Lee to Chin Poy, another undercover agent of the Bureau. Chin Poy was not a witness at the trial. His affidavit submitted in support of the motion denies that On Lee made the admissions which agent Lee testified he had overheard by means of a radio microphone. A further attack on agent Lee's credibility is made by the affidavit of attorney Rosenthal who asserts on information and belief that since the trial agent Lee had been forced to resign from the Bureau of Narcotics because of "improper acts" in other matters, and consequently the United States Attorney has dismissed several pending indictments which required the testimony of agent Lee, thereby evidencing unwillingness to vouch for his testimony.

A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge.[3] In deciding it he may utilize the knowledge he gained from presiding at the trial as well as the showing made on the motion.[4] On an appeal from denial of the motion decision must turn on whether there has been

---

1. Count one charged the sale of a pound of opium contrary to 21 U.S.C.A. §§ 173, 174; count two charged a conspiracy, 18 U.S.C.A. § 371, to violate 26 U.S.C.A. §§ 2553(a) and 2554(a), as well as 21 U.S.C.A. §§ 173, 174.

2. United States v. On Lee, 2 Cir., 193 F.2d 306; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.

3. It is generally said that five requirements should be met before a new trial will be awarded on grounds of newly discovered evidence. See the statement of Johnson v. United States, 8 Cir., 32 F.2d 127, 130, quoted in Brandon v. United States, 9 Cir., 190 F.2d 175, 178: " * * *

(a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

4. United States v. Johnson, 327 U.S. 106, 112, 66 S.Ct. 464, 90 L.Ed. 562; Harrison v. United States, 5 Cir., 191 F.2d 874, 876.

an abuse of discretion in denying it.[5] And the order will not be reversed unless the new material tends to "furnish evidence of defendant's innocence," and is such as would probably produce an acquittal.[6]

■ In the light of these elementary principles, Judge Bondy's denial of the motion was correct. Chin Poy's affidavit is in effect a recantation of a signed statement made by him before the trial.[7] To credit his present assertions that he had no discussion with On Lee concerning narcotics and did not know the purpose of the "box" agent Lee put in "my overcoat pocket" strains credulity. He does not deny that he himself was an undercover agent of the Bureau. He was instructed by agents of the Bureau to engage appellant in conversation; it is absurd to assert that such conversation did not relate to narcotics and that he did not know that the "box" in his pocket was a microphonic device. His own prior signed statement to the agents, attached to the opposing affidavit, refutes his present contention. His affidavit admits fifteen convictions for possession and use of narcotics. His credibility, to say the least, is doubtful.[8] Were Chin Poy to testify at a new trial, his testimony would at best serve only to impeach that of agent Lee; but, in view of his conflicting statements, and his fifteen prior convictions, it is doubtful that the jury would give much credence to his story.[9] Moreover, appellant himself took the stand and disputed agent Lee's story; thus the jury heard conflicting versions and chose not to believe that of appellant.

The other attack upon agent Lee's testimony is based on his subsequent discharge from the service of the Bureau of Narcotics and the dismissal of indictments in cases where he was needed as a witness. As noted above these charges are made on information and belief but we will assume them to be true since the one affidavit submitted in opposition to the motion is silent on this subject. The fact of agent Lee's discharge for "improper acts," whatever they may have been, can do no more than lessen his credibility.[10] But even without his testimony the other evidence at the trial was sufficient to sustain the conviction. There was positive testimony as to appellant's guilt by his co-defendant, Gong Len Ying; and the testimony of an accomplice need not be corroborated in the federal courts.[11] Moreover, agent Gin testified to the sale and this was corroborated by Officer Monahan.

Accordingly, we conclude that were a second trial awarded, the newly discovered evidence offered by appellant's motion would not probably produce an acquittal. There was no abuse of discretion in the denial of the motion. Judgment affirmed.

FRANK, Circuit Judge (dissenting).

I wholly agree with my colleagues that the new affidavit by Chin Poy is no ground for granting a new trial. For, as my col-

5. Weiss v. United States, 5 Cir., 122 F.2d 675, 691–692, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

6. United States v. Forzano, 2 Cir., 190 F. 2d 687, 689; Brandon v. United States, 9 Cir., 190 F.2d 175, 178; Long v. United States, 10 Cir., 139 F.2d 652, 654; Harrison v. United States, 5 Cir., 191 F.2d 874, 876.

7. In a signed statement given on April 14, 1950, and witnessed by three Bureau of Narcotics agents, he recounts his conversations with On Lee which were overheard by agent Lee and subsequently repeated by that agent on trial. The signed statement supported in all respects agent Lee's testimony.

8. Cf. United States v. Cordo, 2 Cir., 186 F.2d 144, 148, certiorari denied sub nom. Minkoff v. United States, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686.

9. Cf. Mr. Justice Jackson's remarks in On Lee v. United States, 343 U.S. 747, at page 756, 72 S.Ct. 967, on page 973, 96 L. Ed. 1270: "It seems a not unlikely assumption that the very defects of character and blemishes of record which made On Lee trust him [Chin Poy] with confidences would make a jury distrust his testimony."

10. Cf. Kramer v. United States, 9 Cir., 147 F.2d 202, 204.

11. Catrino v. United States, 9 Cir., 176 F.2d 884, 889; United States v. Moran, 2 Cir., 151 F.2d 661, 662, 167 A.L.R. 403; United States v. Schwartz, 2 Cir., 150 F.2d 627, 628, certiorari denied 326 U. S. 757, 66 S.Ct. 97, 90 L.Ed. 454.

leagues say, were there a new trial, "it is doubtful that the jury would give much credence to his testimony" because his "credibility, to say the least, is doubtful," in the light of the facts of his "fifteen convictions for possession and use of narcotics." As the prosecutor stated in his affidavit in opposition to defendant's new trial motion, "Obviously, he [Chin Poy] is a person whom a jury would disbelieve." Doubtless that is why the government did not call him at the trial; and doubtless, for the same reason, the government would not call him if there were a new trial.

Consequently, were there such a trial, the sole evidence—if any—of the conversation between Chin Poy and defendant, in which defendant made alleged admissions of his guilt, would be the testimony of Narcotics Agent Lee. But newly discovered evidence—not discoverable until after the trial—makes it clear that either (a) the government would not again use him as a witness, or (b) if it did, his testimony would be so seriously damaged that very probably no jury would believe him. For an affidavit filed in support of the new trial motion contains the following statement which the government does not deny (but in effect admits) and which we must therefore take as true and provable (if necessary) at a new trial: "Since the trial of this case, Agent Lawrence Lee has been forced to and permitted to resign from the service of the Narcotics Bureau of the Treasury Department because of some improper act or acts of Agent Lee in another matter or matters. As a result of this, the Office of the United States Attorney for the Southern District has dismissed several pending indictments which required the services and testimony of Agent Lawrence Lee, being unwilling, apparently, to vouch for the testimony of Lawrence Lee."

I repeat that, as a consequence, at a new trial either there would be no evidence of the conversation between defendant and Chin Poy or it would consist of Agent Lee's testimony which would be so discredited that in all probability the jury would not believe it. In short, either there would

be no evidence whatever of defendant's alleged admissions in his talk with Chin Poy or it would be most unlikely that a new jury would believe that evidence (*i.e.*, Agent Lee's testimony).

My colleagues suggest, however, that the foregoing has no significance, because, even without any evidence as to those admissions, the record contains sufficient evidence to sustain the verdict against defendant. But that fact will not justify denial of a new trial if Agent Lee's testimony may well have been the factor which induced the verdict—*i.e.*, if, absent that testimony, the balance of the evidence was of such character that defendant might well have been acquitted. And the opinion of the Supreme Court in this case, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, demonstrates that that Court so thought. For if the Supreme Court had thought the other evidence so convincing that the absence of Agent Lee's testimony would probably have had no substantial effect on the verdict, *i.e.*, if the Court had thought the jury probably found defendant guilty without regard to that testimony, then of course the Supreme Court would not have granted certiorari to consider, and would not have devoted its entire opinion to considering, whether there was error in receiving this testimony, but would have held merely that if there **was** error it was harmless.[1]

So here we have testimony which the Supreme Court regarded as very likely having led to a verdict adverse to defendant. Surely we should grant a new trial when at such a trial that very testimony, because of newly discovered material, would not be offered by the government or, if offered, almost certainly would not be believed by the jury. For, on that basis, the new evidence would probably produce an acquittal.

My colleagues suggest the following additional argument for their decision: The new matter as to Agent Lee cannot justify a new trial since it is "merely impeaching" and accordingly does not tend to furnish "evidence of defendant's innocence." That, I think, is a harsh and most unjust doctrine. It means this: The government obtains a

---

1. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

conviction through the testimony of a witness whom the jury believed; new evidence is later discovered which, had it been available, in all likelihood would have persuaded the jury to disbelieve that testimony; nevertheless, a new trial should be denied—because this new evidence is "merely impeaching" and negative, and, therefore does not furnish affirmative "evidence of defendant's innocence." Not only is such a doctrine most unjust and (I think) unreasonable, but it comes perilously close to putting on the defendant the burden of proving his innocence: Having once been convicted, unfairly as it now appears from the new evidence, he can procure a fair re-trial only by offering affirmative evidence to prove his innocence—although a basic principle of democratic justice requires the government to prove guilt in order to obtain a valid conviction.

For that harsh and questionable doctrine, my colleagues cite no 'Supreme Court decision. They cite but one case decided in this circuit, United States v. Forzano, 2 Cir., 190 F.2d 687, 689. There the newly discovered evidence was that of a person who, at a new trial, would testify that a statement had been made to him by a major government witness which, if the jury believed this new testimony, would impeach that government witness. In that context, the opinion of this court mentioned the "merely impeaching" doctrine. I think that mention, being unnecessary to the decision, was *obiter dictum,* not entitled to stare decisis rank. And Forzano is easily to be distinguished from the instant case: There the new material was nothing like as damaging to the government's case as is that here, viz., that Agent Lee, the sole government witness as to an alleged fact which probably led to defendant's conviction, is so untrustworthy that the government has dismissed indictments in other cases because it is no longer willing to offer his testimony, and without it the govern-

ment cannot hope to prosecute those cases successfully. In Forzano, it could properly be said that the trial judge had not "abused" his discretion in refusing to grant a new trial. On the facts here, I think the trial judge did "abuse" that discretion.

If the statement in the Forzano opinion of the "merely impeaching" doctrine had been necessary to the decision there, and thus were now a precedent for the government here, I would feel constrained to follow it while it stood, but I would urge my colleagues to overrule it. I would cite the recent examples of the English Court of Criminal Appeals, in Rex v. Taylor, [1950] 2 K.B. 368, 371, where that court overruled its own recent decision in Rex v. Treanor, [1939] 1 All.E.R. 330. The court, after noting that in civil cases the Court of Appeals feels bound by its earlier decisions, "in order to preserve the rule of stare decisis," went on to say: "This court, however, has to deal with questions involving the liberty of the subject" and therefore would overrule a bad precedent which favored the prosecution.[2] I think that makes eminently good sense. Stare decisis finds its basic justification in the desire to avoid upsetting past decisions, no matter how unwise, on which men have importantly relied in the conduct of their affairs. Even in civil cases, the courts should heed Lord Wright's remark: "Great judges have said that the function of the common law was the perpetual quest for justice. I should be sorry if quest for certitude were substituted for quest for justice."[3] That idea should guide this court, particularly in a criminal case when the government cites a precedent embodying an unjust rule inimical to the accused. For the government cannot contend that it will be seriously harmed by a rejection of such a precedent. Its only harm will be, at most, the expense of another trial, a price certainly worth paying to prevent the conviction of a man who may be innocent.

2. See comment in 66 L.Q.Rev. 440 (1950).

3. Lord Wright, The Law of "Invitation," 66 L.Q.Rev. 454, 456 (1950).