UNITED STATES of America, Appellee,

v.

Frank COSTELLO, Appellant.

No. 281, Docket 24997.

United States Court of Appeals
Second Circuit.

Argued March 14, 1958.

Decided May 20, 1958.

Edward Bennett Williams, Washington, D. C. (Morris Shilensky, of Hays, St. John, Abramson & Heilbron, New York City, and Agnes A. Neill, Washington, D. C., on the brief), for appellant.

Arthur H. Christy, Chief Asst. U. S. Atty. for the Southern District of New York, New York City (Paul W. Williams, U. S. Atty., George I. Gordon and Jerome J. Londin, Asst. U. S. Attys., S.D.N.Y., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and BRENNAN, District Judge.

HINCKS, Circuit Judge.

This is an appeal from an order of the District Court which denied appellant's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.[1] The motion initially was based only upon a claim of newly discovered evidence allegedly showing that the fruits of illegal wire tapping had been used at the trial. In the course of hearings on the motion, the appellant was permitted by amendment to enlarge his motion to include two further grounds, viz., an allegedly illegal mail watch and an allegedly improper inspection of the tax returns of veniremen on the trial panel on the orders of the United States Attorney prior to the trial.

Appellant was indicted in 1953 for income tax evasion, in violation of Section 145(b) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 145(b), covering the years 1946 through 1949. After trial upon a prosecution based on the net worth theory he was acquitted on the 1946 count but was convicted on the other three counts. He was sentenced to concurrent five year sentences and was fined $10,000 on each of these three counts.[2] On appeal, this court affirmed the convictions for 1948 and 1949 but reversed as to 1947. 2 Cir., 221 F.2d 668. The Supreme Court, having granted certiorari limited to the question of the sufficiency of the evidence presented to the grand jury, affirmed. 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397.

In May, 1956, pursuant to 28 U.S.C.A. § 2255, the appellant filed a motion for correction of sentence, and the District Court denied the motion. We affirmed. 2 Cir., 239 F.2d 177. The Supreme Court granted certiorari and affirmed. 353 U.S. 978, 77 S.Ct. 1281, 1 L.Ed.2d 1140.

In November, 1956, the motion now before us on appeal was filed below. The District Court, after allowing the amendments referred to above and after an extended hearing of appellant's case, upon a comprehensive and carefully reasoned opinion denied the motion. 157 F.Supp. 461.

---

1. Fed.Rules Cr.Proc. rule 33, Title 18 U.S. C.A.

 "Rule 33. New Trial

 "The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5-day period."

2. By virtue of several admissions to bail, appellant, though sentenced in May, 1954, has served but 10 months of his sentence to date.

### Wiretap Evidence

The district judge concluded that there was no proof that evidence which the Government had introduced at the trial was the fruit of wiretaps and that at any rate there was enough untainted evidence to support the convictions on the counts for 1948 and 1949. We need consider only his further holding that the appellant has not shown that the use of wiretap evidence was not known or could not, with due diligence, have been discovered prior to the trial.

The federal courts in varying circumstances have used either of two recognized tests or standards to determine when new trials should be permitted. One of these tests was originally laid down in the case of Berry v. State, 10 Ga. 511, 527, where the court listed the following six requirements:

"1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to the want of due diligence that it did not come sooner. 3d. That it is so material that it would probably produce a different verdict, if the new trial were granted. 4th. That it is not cumulative only—viz.: speaking to facts, in relation to which there was evidence on the trial. 5th. That the affidavit of the witness himself should be produced, or its absence accounted for. And 6th, a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness."

The other test was developed in the case of Larrison v. United States, 7 Cir., 24 F.2d 82, wherein the following three requirements were specified:

"(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

"(b) That without it the jury *might* have reached a different conclusion.

"(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." 24 F.2d at pages 87–88.

The Government contends that the appellant's motion should be determined by application of the Berry rule, while the appellant urges that the Larrison rule is the appropriate test.

It has been stated that the Larrison rule is limited to cases of "recantation or where it has been proved that false testimony was given at the trial." United States v. Hiss, D.C.S.D. N.Y., 107 F.Supp. 128, 136, affirmed 2 Cir., 201 F.2d 372, certiorari denied 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368. But we need not decide whether appellant's claim comes within the Berry rule or the Larrison rule, or perhaps fits into a category of its own, because the same result is reached no matter which rule is applied. It is well settled that motions for new trials are not favored and should be granted only with great caution. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; Weiss v. United States, 5 Cir., 122 F.2d 675, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550. We think it fundamental that a defendant seeking a new trial under any theory must satisfy the district court that the material asserted to be newly discovered is in fact such and could not with due diligence have been discovered before or, at the latest, at the trial. Nardone v. United States, 308 U.S. 338, 342, 60 S.Ct. 266, 84 L.Ed. 307. See also United States v. Flynn, D.C., 131 F.Supp. 742, 743, where Judge Dimock reached the conclusion that the Larrison rule "like so many of the other rules in our law, requires due diligence of him who invokes it."

Did the appellant or his counsel exercise due diligence at the trial to ascertain and exclude evidence obtained by wiretaps? In this connection the record shows that in 1943 the appellant admittedly had been made aware of the fact that the District Attorney for New York County had placed wiretaps upon his phone. This was again brought to his attention in 1951 in the course of the much-publicized hearings of the Senate's

Special Committee to Investigate Organized Crime in Interstate Commerce— the so-called Kefauver Committee. As a witness in the proceedings below, the appellant testified that this 1943 use of wiretaps by the state authorities had been known to him, in 1954, at the time of trial. And also in the proceedings below lawyers who had represented the appellant at his trial testified that they too had known of these earlier 1943 taps. They also must have known the rule of the second Nardone case, supra. But the appellant and these lawyers all denied that prior to the trial they had known that federal Internal Revenue agents had access to the wiretap information in the possession of the New York County District Attorney. And these denials seem not to have been expressly contradicted on the record.

■ However, in spite of knowledge of earlier wiretaps there is nothing whatever in the record now before us to show that the appellant or his counsel, in defending against the criminal charge of tax evasion, before or at the trial made any effort to discover whether evidence which the prosecution proposed to offer and did offer at the trial had been obtained through the use of wiretaps or to exclude evidence obtained therefrom. Such inaction, in our opinion, constituted a lack of diligence which warranted denial of the motion in so far as it sought a new trial on the ground that some of the evidence received at the trial had been obtained by wiretaps. Especially is this so since, as Judge McGohey remarked below [151 F.Supp. 467]: "[t]here is no rational basis for believing he [the appellant] is so naive as to have supposed that the practice which then [in 1943] proved so fruitful for the State investigation was discontinued." In any event, Judge McGohey after painstaking hearing and meticulous consideration of the appellant's motion found a lack of diligence. There was certainly ample evidence to support that finding. And as the Supreme Court said in United States v. Johnson, supra, 327 U.S. at page 111, 66 S.Ct. at page 466, " * * *

it is not the province of this Court or the Circuit Court of Appeals to review orders granting or denying motions for a new trial when such review is sought on the alleged ground that the trial court made erroneous findings of fact." The Court further said that an appellate court should never intervene "where it does not clearly appear that the findings are not supported by any evidence." 327 U.S. at page 112, 66 S.Ct. at page 466.

The appellant argues that until the recent decision in Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126, the use made by federal agents of the taps by State authorities was generally believed not to be illegal and that consequently his absence of effort to discover and exploit such evidence in advance of trial involved no lack of diligence. Essentially the same argument was made in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982: there, as here, the argument was "that since the state of the law made the appeals seem futile, it would be unfair to those registrants [i. e., convicted defendants] to conclude them by their failure to appeal." In Sunal, the Court answered this argument by pointing out that "the question of law had not been decided by the Court, * * *. The case, therefore, is not one where the law was changed after the time for appeal had expired. * * * It is rather a situation where at the time of the convictions the definitive ruling on the question of law had not crystallized. Of course, if [the defendants] had pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile."

The answer is equally applicable to the argument now made for Costello. He too, like the defendant Benanti, might have raised the point now pressed, on trial and by appeal. And because he now, belatedly, seeks to press the point by a motion for a new trial, he is entitled to no more favorable treatment than the defendants in Sunal who un-

successfully sought to raise their claim by *habeas corpus*. Moreover, before the Supreme Court decision in the Benanti case had been announced appellant's present counsel asserted the very claim now under discussion in the petition below for a new trial. Due diligence required that it be raised seasonably by objection or motion for suppression at or before the trial.

Since we conclude that for lack of diligent discovery and seasonable objection the wiretap evidence does not constitute ground for a new trial, it is unnecessary to discuss the vigorously disputed issues as to whether any of the prosecution's evidence was obtained by wiretaps and if so the extent of its impact on the verdict.

### Mail Watch

Appellant by amendment to his motion contends that in violation of 18 U.S.C.A. §§ 1701–1703 the Government had placed a watch upon his mail whereby Post Office employees during specified periods recorded the names and return addresses which appeared on the outside of mail addressed to the appellant and transmitted the information thus obtained to the prosecution for use in tracking down evidence of Costello's expenditures which was material to the presentation of a net-worth tax evasion case.

There was no proof offered of the actual delay of any mail and the appellant admitted that he never complained to the Post Office about any delays. The District Judge found, however, the practice was such that "while not inevitable, some delay was probable, but only to a very limited extent, i. e., of such mail as reached the Ansonia Station [New York City] just shortly before the carriers were to start out on their deliveries. Such mail, however, would be ready for the following delivery." The Judge further found that there was no delay at all in mail sent to Costello's summer residence. Thus, even assuming some delay in city mail, it is apparent that it was never a delay of more than one delivery. We do not think this comes within the proscription of § 1701 which declares that anyone who "knowingly and willfully obstructs or retards the passage of the mail" shall be guilty of a crime.

Nor do we think there has been any violation of § 1702 which, in pertinent part, declared it to be a crime for anyone to take any letter " * * * out of any post office * * * or which has been in any post office * * * before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another * *." It is undisputed that the mail here in question was never taken "out of any post office" prior to delivery, or that it was ever opened as above stated. Nothing more was done than to record the information carried on envelopes addressed to the appellant. We think this does not come within the prohibition against "taking" a letter or prying into another's secrets or business as used in the statute. In Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877, the Supreme Court's discussion shows that a distinction is to be drawn between material which is sealed and material which is open for inspection. We think the Jackson case necessarily implies that without offense to Constitution or statute writing appearing on the outside of envelopes may be read and used. There seems to be a similar implication in Oliver v. United States, 8 Cir., 239 F.2d 818, petition for certiorari dismissed 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed.2d 858: certainly that case does not suggest that the law is otherwise.

Section 1703(a) penalizes any "Postal Service employee" who "unlawfully detains, delays, or opens any letter * * * which shall come into his possession * * *." However, as we have held in interpreting that section, detention alone without proof that it was for an unlawful purpose does not constitute a violation of this section. Fliashnick v. United States, 2 Cir., 223 F. 736.

The appellant relies upon a revision of postal regulations made as a result of the report of a Senate Committee which

was created to investigate charges that a member of the Senate had been subjected to a mail watch. After holding hearings, the committee reported that although the Chief Inspector of the Post Office Department had testified that the mail must not be delayed or withheld, "it is obvious to your committee that some delay in the mail is unavoidable if the request for coverage is complied with." S.Rep. 2510, 83rd Cong., 2nd Sess., printed at 101 Congressional Record 2564. As a result of this report the Postal Laws and Regulations Sec. 41.4 (1948 ed.), which had expressly sanctioned mail watches at the request of "officers of the law," was rescinded except in so far as applicable to "fugitives from justice." We think, however, that neither the Committee Report nor the revision of the regulations bring a mail watch such as this within the ban of the statutes.

At the hearing on the motion below appellant testified on direct examination that during the periods of the mail watch he and his wife together received on an average, 40 letters a week or about seven a day. It seems unlikely that any delay whatever would result because of the time required to record the data which appeared on the covers of so small a volume. And obviously the action of the Postmaster in revising the regulations as a result of the Committee Report does not amount to a congressional determination either that the regulation was invalid or that the statutes involved were violated.

■ We conclude that the mail watch was not illegal.

### Jurors' Tax Returns

Appellant's third point raises a question of first impression. During the course of the hearing below it developed that prior to appellant's trial the chief prosecutor, for his assistance in selecting a jury, requested an Internal Revenue agent to check the income tax returns of veniremen on the jury panel. The panel consisted of 360 names, but the Revenue Agent testified, without contradiction, that he inspected only 150 returns. From these the agent made, and trans-

mitted to the prosecutor, notes of the taxpayer's occupation, amount and source of income, number of dependents, amount of taxes paid or refunds, and any unusual deductions. The prosecutor in charge testified that the inspection was undertaken in an effort to find out whether any of the prospective jurors had income tax troubles of their own or had other reasons to be unfavorably disposed to the Government: with this information the prosecution was in a position more intelligently to exercise its peremptory challenges.

On the basis of the notes thus derived, together with other information, the prosecutor adopted a numerical system for classifying the jurors, with Class No. 1 composed of those thought probably to be most favorable to the Government, and No. 3 or 4 least favorable. The jury as ultimately constituted contained eight jurors in Class 1 and two each in Class 2 and Class 3. The Government exercised five of its six peremptory challenges: these were exercised against two Class 2 veniremen and against three in Class 3.

The appellant contends that the use by the prosecution of this procedure vitiated his conviction not because it violated any statute or rule of the Supreme Court but because in so doing the prosecution violated the confidential nature of income tax returns and thereby obtained a jury which was "specially conditioned" to find appellant guilty. He contends further that the practice is such that in future cases jurors will be intimidated.

The Government contends that the practice is authorized by Treasury regulations. It relies upon 26 C.F.R. § 458.32 (1949), which declares that employees of the Treasury Department "whose official duties require inspection of returns may inspect any such returns" without making any written application, and also upon 26 C.F.R. § 458.204, which declares that copies of returns "may be furnished to a United States attorney for official use in proceedings before a United States grand jury or in litigation in any court, if the United States is interested in the re-

sult, or for the use in preparation for such proceedings or litigation; or to an attorney of the Department of Justice, for like use, upon written request of the Attorney General, the Assistant to the Attorney General, or an Assistant Attorney General  *  *  *."

It is undisputed that no written request was made for these returns. However, we agree with the Government that under § 458.204 it is only when the returns are sought by "an attorney of the Department of Justice," as distinguished from a "United States attorney," that a written request is necessary. We also hold that the same regulation which authorizes copies of tax returns to "be furnished to a United States attorney" is broad enough to sanction the informal arrangement whereby at the United States Attorney's request an Internal Revenue agent abstracted and transmitted the requested data. In any event, we hold, the absence of a written request, if one was required by the regulation, would not of itself warrant a new trial. And the broad language of § 458.204 plainly does not limit the inspection to tax litigations or to tax returns of accused or suspected tax evaders. But even if the language should be narrowly construed, we believe appellant may not complain of the inspection of returns of others. See Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312.

As to the claim of a "specially conditioned" jury, appellant does not say that the jury which was impaneled was prejudiced against him. He does not claim that any of the jurors were approached by the Government on the subject of their taxes. Nor is there any claim that any of the jurors, until the publicity attendant on the hearing below, knew that their income tax returns had been inspected.[3] The preparatory technique of which the appellant complains did not result in a "blue ribbon jury" or tend to produce such a jury. For the technique was not applied to the selection of the panel: only after the panel had been convened in accordance with the usual procedure was the technique utilized.

The appellant contends that the trial was unfair in that in exercising its challenges the Government had access to information not available to him or to even the wealthiest defendant. But as appellant admits in his brief, not all information properly available to the prosecution is equally available to the accused. In Best v. United States, 1 Cir., 184 F.2d 131, certiorari denied 340 U.S. 939, 71 S.Ct. 480, 95 L.Ed. 677, and in Christoffel v. United States, 84 U.S.App.D.C. 132, 171 F.2d 1004, reversed on other grounds 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826, the court's upheld district court action which refused to permit the defense to inspect FBI reports on the prospective jury panel. And in other phases of a criminal trial the Government may properly obtain and use information not available to the defendant. Thus under Rule 6(e), Fed.Rules Crim.Proc., 18 U.S.C.A., the grand jury minutes are available only to the prosecution.

Appellant further claims that the practice is against public policy in that, once it becomes generally known, prospective jurors will be intimidated or will attempt to avoid jury duty. These, we incline to believe, are farfetched bogies. Prospective jurors whose returns are vulnerable are the very ones whose elimination is facilitated by the practice: knowledge by the others that they were found acceptable to the Government even after an inspection of their returns would hardly be conducive to their intimidation. And the argument that the practice will tend to discourage cheerful jury service, if of any force at all in view of the mandatory nature of such service, would seem not to apply to those having made honest tax returns. There would seem to be no good reason to believe that knowledge that jury service entails exposure of one's tax return to the scrutiny of a district attorney would deter a good citizen from service in the

---

3. It was, however, brought out below that the Government has similarly used jurors' tax returns in certain other unspecified cases.

judicial establishment any more than the fierce publicity which beats upon the private affairs of the citizen appointed to high office in the executive department deters acceptance of such appointment. However that may be, we will not attempt to make a policy-determination as to the propriety of the practice by weighing its aid to law enforcement against its limited curtailment of the privacy of tax returns. For we think this court may not assume to proscribe a practice of the United States attorney's office which violates no statute and no rule which the Supreme Court has made in the exercise of its supervisory power over administration in the lower federal courts. Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

Quite apart from these policy considerations, the crucial question here is whether this appellant was tried by a fair and impartial jury. Since none of the jurors in this case had knowledge of the practice there is utterly no basis for the contention that it resulted in a jury "specially conditioned" to convict or otherwise biased or prejudiced against the defendant. At most, the practice led to challenges of jurors who might have been unduly biased in favor of the defendant. The exercise of peremptory challenges is a rejective, rather than a selective, process of which the appellant has no right to complain. United States v. Marchant, 12 Wheat. 480, 25 U.S. 480, 6 L.Ed. 700; Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 4 A.L.R. 2d 1193, certiorari denied 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775, rehearing denied 335 U.S. 839, 69 S.Ct. 9, 93 L.Ed. 391; United States v. Puff, 2 Cir., 211 F.2d 171, 185, certiorari denied 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106.

A motion for a new trial is always addressed to the discretion of the district judge. United States v. Johnson, supra; United States v. On Lee, 2 Cir., 201 F.2d 722, certiorari denied 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364. We conclude that the district judge below properly exercised his discretion in denying the appellant a new trial.

Affirmed.