**UNITED STATES of America,**
**Appellee,**

v.

**Charles CONCEPCION, Appellant.**
**No. 397, Docket 33899.**

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1970.

Decided Jan. 8, 1970.

Jerome C. Ditore, Asst. U. S. Atty., Eastern Dist. of New York (Edward R. Neaher, U. S. Atty., on the brief), for appellee.

Michael J. Gillen, New York City, for appellant.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and MANSFIELD, District Judge.*

PER CURIAM:

We affirm in open court the conviction of Charles Concepcion on one count of violating 18 U.S.C. section 659, which proscribes theft of interstate or foreign shipments. The sole point raised on appeal is that federal criminal jurisdiction is lacking, i. e., that the truckload of goods which Concepcion hijacked was not an interstate or foreign shipment.

The shipment consisted of 190 cases of photographic equipment shipped from Japan to Nippon Kogaki (U.S.A.), Inc. (hereafter "Nippon"), the consignee, whose place of business is in Garden City, New York. The cargo was unloaded from a ship in Brooklyn on April 11, 1966, where it remained until it was picked up on April 19, 1966, by Benedetto Trucking Company, which had been engaged by an agent of Nippon. The destination of the truck which picked up the shipment—minus two cases of equipment which were sent to the Customs Public Store Appraiser for customs duty evaluation—was a bonded customs warehouse in Manhattan. However, since the cargo was not loaded on the Benedetto truck until 6:00 P.M., the truck was proceeding to its own garage for the night, the delivery to the bonded customs warehouse to take place the next morning.

The truck was hijacked in Brooklyn, en route to the Benedetto garage from the pier. To succeed in his claim, Concepcion must establish that the foreign commerce nature of the shipment had terminated and that the shipment was intrastate in character. The shipment was in fact moving between two points in New York state when it was stolen, cf. United States v. Thomas, 396 F.2d 310, 315 (2d Cir. 1968); United States v. Maddox, 394 F.2d 297 (4th Cir. 1968), but the foreign commerce aspects of the shipment had not terminated when it was hijacked. It is clear from the relevant customs statutes regarding bonded carriers and bonded warehouses that, as a matter of law, the shipment remained under the custody of customs officers until it was cleared for release from the bonded customs warehouse and, at the very least, up to the point of such release, the goods are in foreign commerce. See 19 U.S.C. §§ 1551, 1551a, 1555, 1557; *see also*, United States v. Schwartz, 150 F.2d 627, 628 (2d Cir.), cert. denied 326 U.S. 757, 66 S.Ct. 97, 90 L.Ed. 454 (1945) (dictum).

O'Kelley v. United States, 116 F.2d 966 (8th Cir. 1941), is not in point, for in that case the consignee had accepted and assumed full dominion over the property

* Sitting by designation.

by unloading part of the shipment and placing the balance under its own padlock before the theft occurred. Those facts are not present in this case.

Judgment of conviction affirmed.