UNITED STATES of America,
Appellee,

v.

Louis SPOSATO, Appellant.

No. 894, Docket 71–1206.

United States Court of Appeals,
Second Circuit.

Argued April 30, 1971.

Decided June 11, 1971.

James P. Tierney, Asst. U. S. Atty.,
New York City (Whitney North Sey-
mour, Jr., U. S. Atty., S.D.N.Y., Walter

M. Phillips, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Roy L. Reardon, New York City (Michael V. Corrigan, New York City, of counsel), for appellant.

Before HAYS and FEINBERG, Circuit Judges, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

## I.

Louis Sposato was tried and convicted of perjury in 1969. We affirmed his conviction,[1] and the Supreme Court denied certiorari.[2] He now appeals from Judge Bryan's order denying him a new trial, for which he had moved on the ground of newly discovered evidence. The evidence he relies on is the 1970 arrest of the Internal Revenue Agent who was the government's chief witness against him at his 1969 perjury trial. The agent, Gerald Peden, was arrested pursuant to a complaint[3] charging that he had conspired with others to solicit bribes in return for being influenced in the performance of his official acts. The complaint charged that the conspiracy was in effect during that period when Peden was testifying against Sposato. Sposato contends that Peden's arrest is sufficient to require a new trial of the perjury charge against him. The district court disagreed. We affirm.

The perjury of which Sposato stands convicted occurred at the trial of one John E. Manfredonia, also for perjury.[4] See United States v. Manfredonia, 414 F.2d 760 (2d Cir. 1969). Sposato was called to testify about what happened when Peden, posing as a would-be bettor, tried to get back a $400 deposit after he had been informed that the persons with whom he was placing bets were "out of business." Sposato testified that he himself had returned the money to Peden, that there was no one else present when he did so, and that he had obtained the money from under a rock near a telephone booth.

Peden contradicted Sposato, testifying that an unidentified man in an automobile was at the scene of the money transfer, that this man drove off when he learned why Peden was there, and that he later returned with the money, which he handed to Peden, in the presence of Sposato, with the comment that he had had to get the money from the "main office."[5] Essentially the same stories were repeated at Sposato's trial. The jury evidently believed Peden's version.

## II.

Appellant would have this court order a new trial at which he would have the opportunity to impeach Peden's credibility by this newly discovered evidence of Peden's arrest and the conduct upon which it was based. We hold that he is not entitled to that opportunity. As we recently noted, "[i]t is settled that in a trial a witness' acts of misconduct are not admissible to impeach his credibility unless the acts resulted in the obtaining of a conviction." United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970); see also, United States v. Glasser, 443 F.2d 994 at 1002 (2d Cir. 1971); United States v. Acarino, 408 F.2d 512, 515 (2d Cir.), cert. denied, 395

---

* Of the District of Connecticut, sitting by designation.

1. United States v. Sposato, Dkt. No. 34179 (2d Cir. June 19, 1970). The affirmance was announced in open court and is, therefore, unreported.

2. Sposato v. United States, 400 U.S. 906, 91 S.Ct. 148, 27 L.Ed.2d 144 (1970).

3. The complaint was lodged on January 27, 1970, and signed by John M. Stolzenthaler, an Internal Revenue Service Inspector.

4. That charge against Manfredonia grew out of testimony he had given at his earlier trial for violations of the Wagering Tax Act. See United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968).

5. This episode was important to the Manfredonia case because agents followed the unidentified man in the car to Manfredonia's residence prior to his return with the money and the comment about the main office.

U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969); United States v. Bowe, 360 F.2d 1, 14–15 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); United States v. Murray, 297 F.2d 812, 817 n. 1a (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962). It is not disputed that the charges against Peden have not resulted in any convictions, and appellant offers no reason why the general rule of inadmissibility should not apply to his case. Compare United States v. Glasser, *supra*, at 1002; United States v. Deaton, 381 F.2d 114, 117 (2d Cir. 1967); United States v. Masino, 275 F.2d 129, 133 (2d Cir. 1960).

### III.

■ Even if this evidence would have been admissible to impeach Peden on cross-examination,[6] a new trial was properly denied. A motion for a new trial based on newly discovered evidence is addressed to the discretion of the trial court. United States v. Silverman, 430 F.2d 106, 119 (2d Cir. 1970); United States v. Lombardozzi, 343 F.2d 127, 128 (2d Cir.), cert. denied, 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702 (1965); Brown v. United States, 333 F.2d 723, 724 (2d Cir. 1964). It is "not favored and should be granted only with great caution," United States v. Costello, 255 F.2d 876, 879 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958), and only when it is evident

that the trial judge has abused his discretion. United States v. On Lee, 201 F.2d 722, 724 (2d Cir.), cert. denied, 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953). See United States v. Johnson, 327 U.S. 106, 111, 66 S.Ct. 464, 90 L.Ed. 562 (1946).

■ Reversal of the trial court's order in the circumstances of this case would require a finding by us that the new evidence "is such as would probably produce an acquittal."[7] United States v. On Lee, *supra*, 201 F.2d at 724; see also, United States v. Silverman, *supra*, 430 F.2d at 119; United States v. Polisi, *supra*, 416 F.2d at 576–577; United States v. Acarino, *supra*, 408 F.2d at 516; United States v. Faustin, 371 F.2d 820, 821 (2d Cir.), cert. denied, 387 U.S. 935, 87 S.Ct. 2062, 18 L.Ed.2d 998 (1967). This court has several times held that "[t]he discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial." United States v. Aguillar, 387 F.2d 625, 626 (2d Cir. 1967); see, e. g., United States ex rel. Fein v. Deegan, 410 F.2d 13, 20 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969); United States v. Lombardozzi, *supra*, 343 F.2d at 128; United States v. Switzer, 252 F.2d 139, 145–146 (2d Cir.), cert. denied, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958); United States v. Brewster, 231 F.2d 213, 216 (2d Cir. 1956); see also,

6. *See* Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates (prepared by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States) Rule 608(b) (March 1971):

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if clearly probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness himself or on cross-examination of a witness who testifies to his

character for truthfulness or untruthfulness."

7. This is not a case of "recantation or where it has been proved that false testimony was given at the trial." United States v. Silverman, *supra*, 430 F.2d at 119; see Larrison v. United States, 24 F.2d 82, 87 (7th Cir. 1928) (whether the jury "*might* have reached a different conclusion"). Nor is this a case involving prosecutorial misconduct, see p. 782, *infra*, where "a new trial must be granted if there is a significant possibility that the undisclosed evidence might have led to an acquittal or a hung jury." United States v. Miller, 411 F.2d 825, 831 (2d Cir. 1969). See United States v. Polisi, 416 F.2d 573, 577–578 (2d Cir. 1969).

Shotwell Mfg. Co. v. United States, 371 U.S. 341, 357, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956).

 That principle is applicable here. Accepting Sposato's premise that he could not have been convicted unless the jury believed Peden, and acknowledging that the proffered evidence, if admissible, would tend to impeach Peden's credibility, we nevertheless hold that the district court did not abuse its discretion in concluding that the evidence would not have probably produced an acquittal. The new evidence could only be used "to impeach [Peden's] credibility in general," United States v. Glasser, *supra*, 443 F.2d at 1002, not to impeach his credibility on any particular statement or issue of fact. Nothing is offered to contradict Peden's version of the facts; which was, moreover, corroborated at trial by another witness. Finally, Sposato's testimony that he found the money under a rock is so inherently improbable that the trial judge was well justified in concluding that a new trial would be most unlikely to produce a different result.

### IV.

Appellant urges finally that we remand this case to the district court for a hearing to evaluate the prosecution's awareness of the new evidence at the time of trial. We do not regard this as necessary. The Assistant United States Attorney stated to Judge Bryan in open court that no one in his office knew that Peden was under investigation when he testified. Appellant offers no reason why this statement should not be accepted as true. Moreover, Sposato's trial was in March 1969 and the complaint on which Peden's arrest was predicated was not made until late January 1970. The events to which Peden testified occurred in August 1966.

We are satisfied that there was no error in the denial of appellant's motion for a new trial, or in the refusal to grant

him a hearing to determine the prosecution's awareness of the later-discovered evidence. The judgment is, therefore, affirmed.