**UNITED STATES of America,**

v.

**Michael A. BARRETT, Craig Sweet et al., Defendants.**

No. 95–CR–232.

United States District Court, N.D. New York.

March 12, 1998.

---

Thomas J. Maroney, Office of U.S. Atty., Binghamton, NY, for U.S.; Miroslav Lovric, Asst. U.S. Atty., of counsel.

Office of James E. Long, Albany, NY, for Michael Barrett; James E. Long, of counsel.

Office of Richard Mott, Albany, NY, for Craig Sweat; Richard Mott, of counsel.

### MEMORANDUM–DECISION & ORDER

McAVOY, Chief District Judge.

Defendants Michael Barrett and Craig Sweat have moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendants contend that newly discovered evidence has arisen indicating that the government failed to inform them of *Brady v. State of Md.*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 impeachment material regarding the drug activities of a principal government trial witness. For the reasons that follow, defendants' motion is denied.

### BACKGROUND

In the fall of 1995 and January of 1996, the government indicted and charged Archie Joyner and forty (40) members of his criminal organization (the "Joyner organization") with various narcotics crimes, gun possession

counts, distribution counts, arson-murder counts and Continuing Criminal Enterprise ("CCE"). The indictment alleged that from 1989 through January 1995, the Joyner organization controlled and sold narcotics from various bars in Binghamton, New York. The role of defendants Barrett and Sweat, according to the indictment, was operating one such bar called Choices. The indictment charged Barrett and Sweat with engaging in a CCE and conspiracy to distribute a controlled substance.

Before trial, thirty-one (31) of the indictees pleaded guilty and agreed to testify against the remaining defendants. One such indictee was Shatima Turner, whom the Court released on pre-trial supervision. On April 2, 1996, the trial commenced. On June 4, 1996, the trial jury returned a verdict against four of the defendants but were deadlocked 11–1 in favor of conviction with respect to defendants Barrett and Sweat.

Between the end of the first trial and commencement of Barrett and Sweat's second trial, the government received information regarding cooperating witness Shatima Turner. According to the government, an Endicott police investigator, Richard Mikulski, informed the government that on May 17, 1994, a female New York State Police Community Narcotics Enforcement Team ("CNET") police officer purchased cocaine from an African–American female identifying herself as "Lexus" in Sam's Bar in Endicott, New York. Mikulski further informed the government that during the ensuing summer, a confidential Endicott police informant ("CI") told the Endicott Police that the CI was acquainted with Shatima Turner and that she was using the name "Lexus." Mikulski also stated that Endicott police had stopped a car that summer with at least two African–Americans inside, who had identified themselves as Shatima Turner and Lexus.

Following that telephone conversation, the government states that it contacted the Broome County District Attorney to request assistance in identifying "Lexus" from the undercover CNET police officer. On or about November 4, 1996, the CNET officer participated in a photographic identification. The CNET officer, however, was unable to identify "Lexus" from the group of photographs presented, which included a photograph of Shatima Turner.

On November 15, 1996, the government received information from a New York State Police Troop C Narcotics informant, Julie Gofkowski, who had testified at the first trial concerning the defendants' activities at Choices. Gofkowski told the government that that summer, while she was driving her car and stopped at a stop sign, an African–American female approached her on foot and inquired, "What do you need?" Gofkowski said she believed this individual to have been Shatima Turner.

On November 15, 1996, the government memorialized the above events in a letter to the Court with copies sent to defendants' attorneys. On November 20, 1996, the government filed a Supplemental Trial Memorandum addressing the permissible scope of cross-examination of Shatima Turner in light of the above events.

The second trial against Sweat and Barrett commenced on November 25, 1996. At the outset of trial, the government raised the issue whether defendants could cross-examine Shatima Turner regarding her alleged distribution of cocaine between the first and second trial. After hearing oral argument, the Court offered defendants the opportunity to submit legal authority in response to the government's Supplemental Trial Memorandum. On December 5, 1996, the Court ruled that defendants were foreclosed from cross-examining Shatima Turner regarding alleged cocaine distributions between the time of the first and second trial. Thereafter, Shatima Turner, along with 21 other witnesses, testified at trial. On December 11, 1996, the jury convicted defendants Sweat and Barrett on the CCE and drug conspiracy charges.

A month later, the government asserts that a DEA agent contacted the Binghamton Office of the United States Attorney to coordinate a joint federal-state-local drug investigation. With the participation of the United States Attorney's Office, a narcotics investigation commenced in the Broome County area called "Operation Golden Road." The investigation culminated in May 1997 with

the indictment of 88 defendants, including Shatima Turner, a/k/a "Lexus." The indictment charged Turner with conspiracy to distribute cocaine on both June 19, 1996 and on various occasions from January 1997 through April 1997.

On March 20, 1997, this Court sentenced defendants Sweat and Barrett. Subsequently, defendants filed a timely notice of appeal. Defendants also filed a Rule 33 motion for a new trial with the Second Circuit in August 1997. During oral argument before the Second Circuit panel, however, defendants agreed to withdraw their motion before the Second Circuit and refile their motion with this Court. That motion is presently before this Court.

## DISCUSSION

▮▮ Whether to grant a motion for a new trial pursuant to FED.R.CR.P. 33 rests in the broad discretion of the trial judge. *United States v. Rodriguez*, 738 F.2d 13, 17 (1st Cir.1984). The burden of proving the need for a new trial lies with the defendant. *United States v. Soblen*, 203 F.Supp. 542, 564 (S.D.N.Y.1961), *aff'd*, 301 F.2d 236 (2d Cir.), *cert. denied*, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962). Unlike a Rule 29 motion, the judge in deciding a Rule 33 motion may weigh the evidence and determine the credibility of witnesses. *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992). The court is not required to view the evidence in the light most favorable to the government. *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980). Despite this, the court's discretion is limited; it should only grant a new trial when it "concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* Such motions are not favored and should be granted only with great caution in exceptional circumstances. *United States v. Costello*, 255 F.2d 876, 879 (2d Cir.), *cert. denied*, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551, *reh'g denied*, 358 U.S. 858, 79 S.Ct. 16, 3 L.Ed.2d 93 (1958); *Soblen*, 203 F.Supp. at 564.

▮▮ In the present case, defendants claim that a new trial is mandated because the government failed to disclose material impeachment evidence concerning its cooperating witness Shatima Turner, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Both exculpatory evidence about the defendant and inculpatory evidence regarding government witnesses fall under the *Brady* requirements. However, the failure to turn over such information to the defendant only requires a reversal of the conviction if the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985).

Defendants assert that the government "was in possession of more information regarding Shatima Turner than was supplied [in the government's] November 15, 1996 letter to the Court." Defendants Memorandum of Law, at 7. To support their position, defendants cite to what they term new evidence: the May 1997 indictment against Turner, which lists "Lexus" as one of Turner's aliases and charges her with, among other things, the June 19, 1996 sale of cocaine. Based on the indictment, defendants vaguely contend that the government "must have known" more information regarding Shatima Turner's drug activities and that the government may have purposefully halted an investigation of Turner to maintain her credibility.

The government responds by affidavit that it disclosed all information then known to the government in its November 15, 1996 letter to the Court. The government also refutes defendants' unsupported allegations that Shatima Turner was the target of any federal investigation either before or during the second trial. As explained by the government, Shatima Turner did not become the subject of a federal investigation until commencement of Operation Golden Road. Thus, according to the government, information regarding Turner's drug activities, as charged in the May 1997 indictment, did not surface until the narcotics investigation commenced after the second trial. Furthermore, the government explains that the June 19, 1996

sale of cocaine charged in the indictment is based on circumstantial evidence and a *Pinkerton* theory of liability, and there is no other corroborating evidence that the "Lexus" involved in the sale of cocaine on that date is Shatima Turner.

It is plain that defendants' argument is based on little more than rank speculation. *See, e.g., United States v. Upton,* 856 F.Supp. 727, 746 (E.D.N.Y.1994) (stating that mere speculation is insufficient to establish *Brady* violation). The government unequivocally states that it disclosed all available information regarding Shatima Turner in its November 15, 1996 letter to the Court and defendants. Defendants' unsubstantiated and baseless accusations that the government possessed additional information not disclosed in the November 15, 1996 letter do not, without more, provide reason for a new trial.

Moreover, the May 1997 indictment of Shatima Turner is hardly the smoking gun that defendants maintain. As explained by the government, it did not learn of any further information regarding Shatima Turner until commencement of Operation Golden Road *after* defendants' second trial. In short, all we have in this case is unsupported speculation by defendants that the government failed to disclose *Brady* material regarding a cooperating witness. In light of the governments' uncontradicted explanation for its actions, the Court finds that defendants' argument does not rise to the level of a *Brady* violation, and thus, a new trial is not warranted.

The Court has considered defendants, remaining arguments and finds them to be similarly without merit.

### CONCLUSION

For the reasons stated above, defendants' motion for a new trial is DENIED.

**IT IS SO ORDERED.**