**UNITED STATES of America**

v.

**Benjamin MALLAH, Defendant.**

**No. 73 Cr. 881 (MP).**

United States District Court, S. D. New York.

Feb. 24, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, by Robert J. Costello, Asst. U. S. Atty., New York City, for U. S.

Fischetti & Shargel, New York City, by Gerald L. Shargel, New York City, for defendant.

## DECISION

POLLACK, District Judge.

For the second time in less than six months, Benjamin Mallah seeks a new trial on a criminal indictment for narcotics conspiracy, this time pursuant to Rule 33 Fed. R.Crim.P. The instant motion was filed on January 10, 1977. The previous attempt filed July 26, 1976 was made pursuant to 28 U.S.C. § 2255 and proved unsuccessful; it was denied on October 19, 1976 in opinion and the judgment thereon was affirmed by the Court of Appeals, Second Circuit, on February 7, 1977 on the opinion below. The ground of that application was allegedly perjurious trial testimony of Cecile Mileto, a government witness. In the present proceeding, Mallah charges that another of the trial witnesses for the government, Joseph Conforti, committed perjury on his cross-examination and that some government agents knew or should have known that his responses were perjurious.

Since there is no reasonable likelihood that the supposed perjury would have affected the judgment of the jury or brought a different verdict, in addition to the absence of an evidentiary showing that the alleged truth could not be discovered earlier in the exercise of due diligence as well as the untimeliness of this application, the motion for a new trial must, in all respects, be denied.

On January 7, 1974, Mallah was convicted by a jury after a 12 day trial of conspiring with others in respect to the distribution of narcotic drug controlled substances. 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). The government contended that he was the money man or backer of the enterprise. On February 26, 1974 he was sentenced to a prison term of ten years with a Special Parole term to follow of three years, and was fined $25,000.00. The conviction was affirmed, *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974) and the mandate thereon was issued on December 11, 1974. A petition for certiorari was denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

The basis for the present motion is contained in one sentence of paragraph "6" of the affidavit of Mallah's attorney in which he asserts in conclusory form that "Facts which were disclosed at a very recent trial of essentially the same conspiracy, *United States v. DeSaverio,* No. S 76 Cr. 195 (Frankel, J.) reveal that Conforti committed perjury at defendant Mallah's trial and, at the very least, some agents of the government knew the true facts which ultimately contradicted Conforti's testimony." The purported newly discovered evidence was that a co-conspirator, Jack Spada, was in federal prison at a time when Conforti said Spada was present at a delivery of heroin by Conforti to Jack Kaplan in his hospital room.

In the charge to the jury they were told the following:

I will now turn to the defendants, one by one, with respect to their alleged connection with the counts in which they are charged.

The defendant Benjamin Mallah is charged in Count 1 with conspiracy. The government contends that the defendant Mallah was connected in some or another manner to the alleged conspiracy by the witnesses Lipsky, Mrs. Mileto, Conforti, and by the government Agents Stromfeld, Hayward, Samuel and Wanieski, and also by Sergeant De Luca and Patrolman Lino, and by the stipulated testimony of Nancy O'Malley and by testimony from Mark Miklitsch, the fifteen-year-old boy.

Conforti's testimony, including that pertaining to Spada, was sharply attacked on summation by Mallah's attorney as incredible for a variety of reasons expressed.

The evidence at trial established that Benjamin Mallah's role in the conspiracy was to provide large sums of money for the purchase of narcotics and to share accordingly in the profits from its resale.

Conforti testified that in July 1971 Conforti went to Philadelphia with Louis Mileto * where the latter delivered a kilogram of heroin to Sperling's customers. After the delivery Mileto showed Conforti a box containing $60,000. When Conforti asked if the money was for Sperling, Mileto said, "No, its going to Bennie, one of his partners."

During the return trip to New York, Conforti asked Mileto who Bennie was. Mileto stated that "Bennie was Herbie's partner, his backup man for money problems if you needed money in the junk business, Bennie was there to give him money," and that "this money was to be delivered to Bennie." In New York Mileto picked up an additional $17,000., which was placed in the same shoe box and wrapped with the same paper. Mileto and Conforti then drove to Spring Street where Conforti remained in the car while Mileto went into Sperling's building. Some 15 or 20 minutes later Conforti saw Mallah exit the building carrying the box of money which he recognized because of the paper with which it was wrapped. When Mileto returned to the car, Conforti asked him "who is that guy carrying the money."

Mileto told Conforti that "it was Ben Mallah."

In February 1972 Conforti was present at 5 Spring Street when Mallah and Sperling were in the bedroom talking to Louis Mileto following the latter's arrest. Conforti overheard Sperling berating Mileto in Mallah's presence for having extra packages of heroin which Sperling had discovered when Conforti, the day before, delivered the heroin stored by Mileto in Zelma Vance's apartment. Conforti also heard Sperling (who apparently concluded that Mileto had been stealing some of his heroin and selling it on his own) at that time tell Mallah, "I told you so," to which Mallah replied, "What could you do?".

Patrolman Gerald Lino testified concerning a conversation between Sperling and Mallah that he overheard on August 16, 1972 while secreted in a car parked in front of the barbershop at 844 Seventh Avenue:

Sperling: "I got to have the stuff."

Mallah: "Don't worry about it."

Sperling: "Fifty thou, right."

Mallah: "Yes, right, fifty-fifty."

Sperling: "But I got to have it. You know I need it."

Mallah: "Don't worry about it. I'll see the people this afternoon, tonight or early tomorrow. You should have it."

Sperling: "But I need it."

Mallah: "Don't worry about it. If the people were straight, if they are not on the run we should have it."

Patrolman Lino minutes later overheard co-conspirator Norman Goldstein ask Barney Barrett, "Are they going to get it?", to which Barrett replied that he didn't know. Goldstein then sent Barrett back into the bar, which Sperling and Mallah had entered, to find out. Barrett came out shortly and told Goldstein, "Yes, we should have it tomorrow." Photographs taken at the time of these conversations show Mallah and Sperling standing next to the car in which

---

* Mileto worked for Herbert Sperling, and both were named as co-conspirators. Sperling had been previously tried and convicted on July 12, 1973 for his role in the conspiracy.

Patrolman Lino was hidden and also show Barrett and Goldstein close by. Patrolman Lino also testified that the word "stuff" in the Mallah-Sperling conversation referred to a quantity of narcotics.

Barry Lipsky, a co-conspirator, testified that during one of their trips to Ballantine's barbershop in the summer of 1971 to obtain narcotics Lipsky asked defendant Pacelli to identify the people standing in front of the barbershop with Sperling. Pacelli then told Lipsky that one of the persons was "Louis" and that "Louis works for Herby." Lipsky then asked Pacelli "Who' that other guy; with the bald head and the suntan and yellow sunglasses?" Pacelli then told Lipsky "That's Benny Mallah, Herby's junk partner."

After Mallah's direct examination, where he denied knowing Pacelli, Lipsky testified that he had seen Mallah with Pacelli on at least four occasions in the summer and fall of 1971.

Cecile Mileto, widow of co-conspirator Mileto, testified that she had once seen Mallah and Sperling standing next to a table on which were piled several packages of white powder. As the packages were placed in a shopping bag, Mallah asked Sperling whether he would have enough money for them.

Mallah's defense was that he was a bookmaker and had dealt with Sperling in that capacity. He denied knowing Joseph Conforti, Louis Mileto and Cecile Mileto and denied having the conversation with Sperling which had been testified to by Patrolman Lino. Mallah also denied being at the 5 Spring Street address. That testimony was rebutted by surveillance agents. As the Court of Appeals noted "[t]here was also evidence that Mallah fled when he heard that some members of the conspiracy had been arrested." Finally, at the time of his arrest, Mallah had $8,000 in his possession.

The transaction on which the motion for a new trial is grounded, the hospital delivery of heroin to Jack Kaplan, did not implicate Mallah. It was totally irrelevant whether Spada was actually present. However, there was ample other evidence, including the evidence from other witnesses as indicated above, for the jury to convict Mallah.

■ Fed.R.Crim.P. 33 states that "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment . . .." The two year period begins to run "from issuance of the mandate of affirmance by the appellate court." 2 Wright, *Federal Practice and Procedure* § 558 at 536 (1969). *See also Oddo v. United States,* 171 F.2d 854, 858 (2d Cir. 1949). In the present case the Court of Appeals issued its mandate of affirmance on December 11, 1974; the instant motion was filed on January 10, 1977, more than two years later, and consequently is untimely.

■ Moreover, the instant motion does not satisfy the requirement that a Rule 33 motion brought on the ground of newly discovered evidence "can succeed only where the evidence discovered after trial could not, with the exercise of due diligence, have been discovered earlier . . . .." *United States v. Bermudez,* 526 F.2d 89, 100 (2d Cir. 1975). *See also United States v. Stofsky,* 527 F.2d 237, 244–45 (2d Cir. 1975), *petition for cert. denied,* 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80; *United States v. Roberts,* 388 F.2d 646, 648 (2d Cir. 1968). No reason has been suggested, and none appears, why Mallah's attorney could not, in the exercise of reasonable diligence, have discovered that Jack Spada was in jail at the pertinent time.

Defense counsel, who had previously represented Kaplan, one of the alleged participants in the transaction where Spada was mentioned, was in possession before the trial of a tape recording outlining the incident now in dispute. Defense counsel could apparently have questioned the former client; furthermore, counsel made no request to either the prosecution or the federal Bureau of Prisons to provide information concerning Spada's whereabouts at the time of the alleged transaction.

In any event, in light of the ample evidence of Mallah's guilt adduced at trial

there is no reasonable likelihood that the jury's judgment would have been affected had it been aware that Joseph Conforti testified inaccurately or falsely on cross-examination concerning a transaction in which Mallah was in no way implicated. It is therefore unnecessary to resolve whether the prosecution knew or should have known that Conforti's testimony was perjured. *Compare United States v. Stofsky, supra, with United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Accordingly, the motion of Benjamin Mallah for a new trial is, in all respects, denied.

SO ORDERED.