**UNITED STATES of America, Appellee,**

v.

**Domingo REYES, Defendant–Appellant.**

**No. 809, Docket No. 94–1378.**

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1995.

Decided Feb. 23, 1995.

David A. Lewis, The Legal Aid Society, Federal Defender Div., Appeals Bureau, New York City, for defendant-appellant.

Robin W. Morey, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Paul G. Gardephe, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before: NEWMAN, Chief Judge, MINER, Circuit Judge, and KAPLAN, District Judge.*

JON O. NEWMAN, Chief Judge:

On this appeal from the denial of a motion for new trial in a criminal case on the ground of newly discovered evidence, we write primarily to clarify the pertinent date from which to measure the two-year period for filing such a motion. Defendant-appellant Domingo Reyes appeals from the June 27, 1994, order of the District Court for the

* The Honorable Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

Southern District of New York (Kevin Thomas Duffy, Judge) denying as untimely and without merit his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. We hold that the motion was timely because filed within two years of the date of issuance of our mandate affirming the conviction, but that, with respect to the merits, the denial was within the District Court's discretion. We therefore affirm.

### Background

Reyes was arrested for his role in a 1989 narcotics transaction in the Bronx, principally involving Oswaldo Arango, José Munoz, a person identified only as "Juan," and one unidentified person. The investigation was conducted by a unit of the Drug Enforcement Administration ("DEA") known as Group 33. The Government's evidence, elicited primarily from José Freddy Diaz, a DEA informant, permitted the jury to find that Diaz, posing as a buyer of cocaine, came in contact with a Colombian drug seller, whose name he did not learn. With DEA agents observing, Diaz met on a sidewalk with the Colombian, "Juan," Arango, Munoz, and the appellant Reyes. Surveillance agents later observed Arango, Munoz, and Reyes checking the street and peering into parked cars, apparently to determine if law enforcement officers were in the neighborhood.

Diaz spoke with Reyes, who offered to deliver the cocaine Diaz was trying to purchase. Diaz also recounted a conversation in a restaurant with the Colombian concerning a cocaine sale. During the conversation, Reyes and others kept going outside to see if law enforcement officers were in the area. Ultimately Munoz took Diaz to a nearby garage, where a quantity of cocaine was displayed. The Colombian and others from the restaurant, including Reyes, waited outside the garage. Upon a signal from Diaz, DEA agents arrested the suspects and seized the cocaine.

A jury convicted Reyes of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846, and acquitted him of aiding and abetting the distribution. We affirmed his conviction by summary order. *United States v. Reyes*, 932 F.2d 956 (2d Cir.1991) (mem.). After this Court's affirmance of the conviction, Reyes filed a motion for new trial, alleging newly discovered evidence. He asserted that developments in cases tried after his had seriously challenged the credibility of James Hunt, one of the surveilling DEA agents who had testified in Reyes's case that he had observed Reyes's lookout activities. Judge Duffy denied the motion as untimely and without merit.

### Discussion

#### I. Timeliness

Criminal Rule 33 provides that "a motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment." Reyes filed his motion on April 28, 1993. The District Court concluded that the motion was untimely because it was filed more than two years after the April 26, 1991, summary order affirming the conviction. However, this Court's mandate issued on May 31, 1991. The narrow issue presented is whether, in the event of an appeal in a criminal case, the two-year period for a Rule 33 motion on the ground of newly discovered evidence runs from the date of the appellate court's judgment or the date of its mandate. Those dates are generally not the same, as occurred in this case. The judgment is the document that states the dispositive action taken by the court of appeals,[1] and it becomes effective upon its entry on the docket of the court of appeals. *See* Fed.R.App.P. 36; *cf.* Fed.R.Civ.P. 58 (district court judgment effective when entered on docket).[2]

---

1. In the Second Circuit, when a case is decided by a published opinion, a separate piece of paper is normally prepared containing the judgment of the Court of Appeals; when a case is decided by summary order, *see* 2d Cir.R. § 0.23, the order itself contains decretal language ("It is hereby Ordered, Adjudged, and Decreed") and serves as the judgment.

2. Date of entry of an appellate court's judgment is especially relevant to the time for petitioning the Supreme Court for a writ of certiorari, which

The mandate is the document that officially conveys to the district court the action taken by the court of appeals. The mandate consists of a certified copy of the appellate court's judgment, a copy of the opinion, and any direction as to costs.[3] *See* Fed.R.App.P. 41(a) (amended 1994). The mandate issues 7 days after the expiration of the time for filing a petition for rehearing, unless the time for issuing the mandate is shortened or lengthened by court order. *Id.* The time for filing a petition for rehearing is 14 days after entry of the appellate court's judgment (45 days in civil cases in which the United States or an agency or officer thereof is a party), unless the time for filing the petition is shortened or enlarged by court order. Fed.R.App.P. 40(a) (amended 1994). The time for issuing the mandate in most cases is therefore 21 days after entry of the appellate court's judgment.

Appellate courts considering the computation of Rule 33's two-year period with respect to appealed convictions have generally faced the issue whether the time runs from the entry of the judgment *in the district court* or from a later date reflecting action by the court of appeals. These courts have uniformly looked to the date of action in the court of appeals. *See Romero v. United States*, 28 F.3d 267, 268 (2d Cir.1994) (motion timely); *United States v. Dayton*, 981 F.2d 1200, 1202–03 (11th Cir.1993) (same); *United States v. Spector*, 888 F.2d 583, 584 (8th Cir.1989) (motion untimely).[4] Though many of these decisions have stated that the event that marks the start of the two-year period is the issuance of the appellate court's mandate, *see, e.g., Romero*, 28 F.3d at 268 ("the date of the issuance of the mandate of affirmance"); *Dayton*, 981 F.2d at 1203 ("the return of the mandate"); *Spector*, 888 F.2d at 584 ("when the appellate court issues its mandate of affirmance"); *United States v. Gross*, 614 F.2d 365, 366 n. 2 (3d Cir.) ("the date when the appellate court issues its mandate"), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980); *United States v. Granza*, 427 F.2d 184, 185 n. 3 (5th Cir.1970) ("issuance of the mandate of affirmance"); *Casias v. United States*, 337 F.2d 354, 356 (10th Cir.1964) ("mandate of affirmance"); *Harrison v. United States*, 191 F.2d 874, 876 (5th Cir.1951) ("mandate of affirmance"), in none of them has it mattered whether the time ran from the date of the entry of the appellate court's judgment, as the Government contends in the pending appeal, or from the date of issuance of the appellate court's mandate, as the appellant contends.[5] That precise issue appears to have been decided only by one district court, which ruled that the date of the mandate governs. *United States v. Provost*, 777 F.Supp. 774, 776 (D.S.D.1991), *aff'd without consideration of this point,* 969 F.2d 617 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 986, 122 L.Ed.2d 139 (1993).[6]

is 90 days "after the date of entry of the judgment." Sup.Ct.R. 13.1.

**3.** In the Second Circuit, when a case is decided by published opinion, the mandate is prepared by making a certified copy of the judgment, affixing to the copy a legend reading "ISSUED AS MANDATE" and displaying the date of issuance, and attaching to the copy a copy of the Court's opinion. When a case is decided by summary order, the mandate is a certified copy of the order to which has been affixed a legend reading "ISSUED AS MANDATE" and displaying the date of issuance. All mandates are physically transmitted to the district court.

**4.** The only contrary statement we have located is dictum in *United States v. Cross*, 928 F.2d 1030, 1053 n. 75 (11th Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991), which the Eleventh Circuit has declined to follow, *see United States v. Dayton*, 981 F.2d 1200, 1202 (11th Cir.1993).

**5.** In addition, several district courts in the Southern District of New York have said that the date of the appellate court's mandate governs, also in cases where nothing turned on whether the two-year period ran from that date or the date of the appellate court's judgment. *See United States v. Biaggi*, 823 F.Supp. 1151, 1160 (S.D.N.Y.1993); *United States v. Susana*, 89 Cr. 198, 1993 WL 190339, at *1 (S.D.N.Y. June 3, 1993) (court says date of mandate controls but cites date of appellate court's judgment); *United States v. Mallah*, 427 F.Supp. 328, 331 (S.D.N.Y.), *aff'd without consideration of this point,* 559 F.2d 1205 (2d Cir.1977) (mem.). Interestingly, in *Biaggi* the Government contended that the date of mandate controlled, preferring that date to an even later date urged by the defendants.

**6.** One court has stated, in a perplexing dictum, that the time period runs from "the date when the appellate process is terminated," suggesting that the date of the mandate governs, and then added that the Rule 33 motion must be made

Some of the courts articulating the date of issuance of the mandate as the starting date have done so on the theory that the words "final judgment" in Rule 33 mean "the date on which the appellate process 'is terminated.'" *See United States v. Cook*, 705 F.2d 350, 351 (9th Cir.1983) (quoting various cases); *United States v. White*, 557 F.2d 1249, 1250 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *Smith v. United States*, 283 F.2d 607, 609, 610 (D.C.Cir.1960) (Bazelon, J., with whom Edgerton, J. joins in part, concurring); *United States v. Crawley*, 32 F.R.D. 168, 169 (W.D.S.C.1963).

The Government makes a substantial argument in favor of starting the two-year period, in the case of affirmed judgments, from the date of the court of appeals judgment. First, the Government cites two district court decisions stating that the time period runs from the date of the appellate court's judgment. *See United States v. DeCarlo*, 848 F.Supp. 354, 355–56 (E.D.N.Y.1994); *United States v. Arzola*, 87 Cr. 692, 1991 WL 120365, at *1 (S.D.N.Y. June 21, 1991).[7] The Government also points out that our own decision in *Romero*, though stating that the time period runs from issuance of the mandate, mentioned the date of the judgment of affirmance and omitted any reference to the date on which the mandate issued. *Romero*, 28 F.3d at 268.

More significantly, the Government argues from the provisions of Rule 36 of the Federal Rules of Appellate Procedure. Rule 36 states that "notation of a judgment in the docket constitutes entry of the judgment." This provision clarified prior practice, which had created uncertainty as to whether the effective date of an appellate court's decision was the date it was rendered or the date the mandate was issued. *See Commissioner v. Estate of Bedford*, 325 U.S. 283, 287, 65 S.Ct. 1157, 1159, 89 L.Ed. 1611 (1945) (noting that the Second Circuit had considered the "order for mandate" and not the "opinion" to be the judgment). Now that Appellate Rule 36 clarifies that an appellate judgment is considered "entered" when notation of the judgment is made in the appellate court's docket, it is arguable that the date of the "final judgment" for purposes of Criminal Rule 33 is the date when that judgment is entered on the appellate docket. In the Second Circuit, that date is always the same date that the decision is rendered. The Government argues that the many appellate opinions that started the two-year time period of Criminal Rule 33 from the date of mandate did so either because they were rendered before Appellate Rule 36 and therefore used the date of mandate to mean the date of judgment, or because they were rendered after Appellate Rule 36 and, like our own decision in *Romero*, simply repeated the language of pre-Appellate Rules case-law.

Finally, the Government urges us to select the appellate judgment date in order to avoid the longer time periods that might become available in those cases where the court of appeals exercises its discretion to stay issuance of the mandate pending Supreme Court review. *See* Fed.R.App.P. 41(b).

Though the issue is not free from doubt, we are persuaded to stay with the language of the earlier decisions that starts the two-year period from the date the mandate of the court of appeals issues. As the Eleventh Circuit has pointed out:

[A]t this point in time, we are confronted with a principle which has been accepted as the law and relied upon as such to provide continuity in judicial application....

Contrary to the government's position, we place greater significance on the fact that neither Congress nor the Supreme

---

"within two years after the final date of the appellate judgment," suggesting that the date of the appellate judgment governs. *United States v. Holman*, 436 F.2d 863, 868 n. 1 (9th Cir.1970), *cert. denied*, 402 U.S. 913, 91 S.Ct. 1394, 28 L.Ed.2d 655 (1971). *Pelegrina v. United States*, 601 F.2d 18, 19 n. 1 (1st Cir.1979), cites decisions referring to the date of the mandate, but notes the date of the appellate court's judgment.

7. The Government also relies on *Susana*, 1993 WL 190339, at *1, and *Alvarez v. United States*, 808 F.Supp. 1066, 1089 (S.D.N.Y.1992); those decisions state that the date of the mandate controls, though they refer to the date of the appellate court's judgment.

Court has intervened to "correct" this presumably "misguided" analysis applied in the cases which have reached the same conclusion as *Harrison* and *Granza*. *Dayton*, 981 F.2d at 1203. Though the Eleventh Circuit was focussing on the choice between the date of mandate and the date of sentence, its point is equally valid with respect to the choice between date of mandate and date of appellate judgment. In addition, we do not think that Appellate Rule 36, which concerns entry of appellate judgments, is a reliable source for determining whether Criminal Rule 33 should be interpreted to start the two-year period from the effective date of an appellate judgment or the date the appellate mandate issues. Further, it would be somewhat anomalous to include within the two-year period for making a Rule 33 motion an interval, between the notice of appeal and the issuance of an appellate court's mandate, during which a district court is without jurisdiction to grant the motion. *See* Fed. R.Crim.P. 33 (motion may be granted "only on remand of the case"). Finally, we think the Government's fears of unduly delayed Rule 33 motions are exaggerated. Appellate courts remain in control of the date for issuing mandates and generally delay issuance only when the merits of a criminal appeal are of sufficient substance to make Supreme Court review at least a reasonable possibility.

For all of these reasons, we hold that the time period for appellant's Rule 33 motion began to run on May 31, 1991, the date our mandate issued on the prior appeal. The motion filed April 28, 1993, was therefore timely.

## II. The Merits

The District Court helpfully proceeded past its ruling on timeliness and considered the merits of appellant's Rule 33 motion. The Court's decision to deny the motion was well within its discretion. *See United States v. Mayo*, 14 F.3d 128, 132 (2d Cir.1994). New evidence that is merely impeaching will not ordinarily justify a new trial. *See Mesarosh v. United States*, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956); *United States v. Spencer*, 4 F.3d 115, 119 (2d Cir.1993).

Appellant's new evidence concerns allegations, arising in cases tried after his trial, that DEA Agent Hunt had lied with respect to aspects of his observations in these later cases. *See Delarosa v. United States*, 93 Cr. 2724 (S.D.N.Y.1994); *Alvarez v. United States*, 808 F.Supp. 1066, 1081 (S.D.N.Y. 1992); *United States v. Huascar Lara*, 89 Cr. 1006 (S.D.N.Y.1990); *see also United States v. Bravo*, 808 F.Supp. 311, 318 n. 8 (S.D.N.Y.1992) (discussing allegations involving Agent Hunt and DEA Group 33). These allegations had been of sufficient gravity to prompt the granting of a new trial in *Alvarez*, and dismissal by the Government in *Delarosa* and a narrowing of the case in *Huascar Lara* after the trial judges in these latter two cases had expressed substantial concerns about Agent Hunt's veracity.

Despite the seriousness of the allegations about Agent Hunt's testimony in other cases, Judge Duffy did not err in concluding that new evidence impeaching Hunt's credibility did not warrant a new trial for Reyes. The new evidence did not refute any of Hunt's testimony against Reyes, *see United States v. Sposato*, 446 F.2d 779, 781 (2d Cir.1971), and, in any event, that testimony was of marginal significance. Hunt testified only to observing Reyes appearing to be looking to see if agents were in the area, an observation also testified to by another DEA agent. The core of the evidence against Reyes came from the testimony of Diaz, who negotiated the cocaine transaction and dealt directly with Reyes, and whose credibility Reyes had ample opportunity to impeach. Judge Duffy was entitled to conclude that Reyes had not shown that the new evidence "would probably lead to an acquittal." *United States v. Spencer*, 4 F.3d 115, 118 (2d Cir.1993); *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir.1992).

The order of the District Court is affirmed.