UNITED STATES of America

v.

Dimas Hilario ZORILLA, Defendant.

Nos. 95 Civ. 7798 (JGK), 90
Cr. 90-01 (CMM).

United States District Court,
S.D. New York.

May 7, 1996.

Dimas Hilario Zorilla, Fort Dix, New Jersey, pro se.

Mary Jo White, United States Attorney for the Southern District of New York by James J. Benjamin, Jr., Assistant United States Attorney, New York City, for Respondent.

## OPINION AND ORDER

KOELTL, District Judge:

Dimas Hilario Zorilla brings this petition *pro se* for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. On May 22, 1990, following a two-day jury trial, Zorilla was convicted of conspiring to distribute and to possess with an intent to distribute cocaine in violation of 21 U.S.C. § 846, and possessing with intent to distribute cocaine within 1000 feet of a school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 845a, and 18 U.S.C. § 2. On July 26, 1990, Zorilla was sentenced by District Judge Charles M. Metzner to concurrent prison terms of 151 months. Zorilla's conviction was affirmed by the Court of Appeals for the Second Circuit by summary order on February 6, 1991.

### I.

The evidence at trial established that on February 5, 1990 Zorilla helped to set up the sale of nine kilograms of cocaine to Ramon Rodriguez, a Drug Enforcement Administration ("DEA") informant. Zorilla had a taped telephone conversation with Rodriguez at about 8:30 p.m. that night to arrange for Rodriguez to obtain a sample of cocaine from Zorilla at Zorilla's tire shop in New York City. At about 9:00 p.m. Rodriguez went to the tire shop, followed by two DEA agents, John McKenna and J. Erik Stangeby. Rodriguez obtained the cocaine sample, left the shop, and delivered the sample to Agent McKenna. Later that evening, Zorilla paged Rodriguez, who returned to the shop followed by the two DEA agents. Two unidentified men then arrived at the store, one carrying a large brown shoulder bag. The man with the bag entered the tire shop, emerged a short time thereafter, spoke briefly to the other man who had remained outside, and then left. The man who had remained outside left next, followed by Zorilla and Rodriguez. A short time later, Agent McKenna arrested Zorilla. The brown shoulder bag was found in the basement of Zorilla's tire shop. The bag was found to contain nine kilograms of cocaine.

The Government's evidence at trial included the testimony of agents McKenna and Stangeby as well the recording of the telephone conversation between Zorilla and Rodriguez. Rodriguez did not testify. Zorilla's defense at trial consisted principally of denying that he knew there were drugs involved in the transaction with Rodriguez. Zorilla testified in his own defense, confirming much of what transpired on February 5, 1990, although denying that he knew that cocaine was the subject of the transaction.

Zorilla now seeks to vacate his conviction on the basis of the Government's alleged failure to disclose certain alleged wrongdoing regarding the two DEA agents who testified against Zorilla at trial in violation of the Government's disclosure obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

### II.

■ Zorilla's claim is barred because this petition is his second and is based on claims that could have been brought in his first petition. The failure to have brought the claims in the earlier petition constitutes an abuse of the writ, absent a showing of both cause for the default and prejudice from the error alleged or a fundamental miscarriage of justice. *McCleskey v. Zant,* 499 U.S. 467, 470, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991) ("The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus."); *Femia v. United States,* 47 F.3d 519, 523–24 (2d Cir.1995) (abuse of the writ analysis explained in *McCleskey* for § 2254 petition applies equally to § 2255 petitions). On the first petition, which was filed August 30, 1991, Zorilla was represented by counsel. That petition asserted a claim that Zorilla was not sentenced properly under Fed. R.Crim.P. 32(c)(3) and also asserted a claim of ineffective assistance of trial counsel. Judge Metzner denied the petition on the merits. *See United States v. Zorrilla,* 90 Cr. 90, 1991 WL 206274 (S.D.N.Y. Sept. 30, 1991).

■ Zorilla has not established "cause" for failing to include the current allegations in his original petition. The cause prong of the *McCleskey* test "requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim," in the first petition. *McCleskey*, 499 U.S. at 493, 111 S.Ct. at 1470 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). *See Femia*, 47 F.3d at 524. The present petition was filed four years after the first petition and includes a single claim based on the Government's failure to disclose alleged misconduct of the two DEA agents who testified against Zorilla, both of whom were members of Group 33, a DEA unit which came under scrutiny for various improprieties arising from cases unrelated to Zorilla's. These claims were not included in the first petition, as Zorilla concedes: "The subject matter of this motion has never been brought before any court by Zorilla." (Pet.'s Mem. at 1.) Zorilla alleges that he became aware of the information sometime after August 1993. (*See* Zorilla Aff. ¶ 4.) Attached to his petition, however, are copies of newspaper articles about DEA Group 33 that were published by the New York Daily News and the Philadelphia Daily News on August 18 and 19, 1991. Thus, it is plain from the petition that reports about Group 33 were circulating in the press long before the present petition was filed, and the particular stories Zorilla now relies upon as support for his petition were actually printed ten days before his first § 2255 petition was filed. Zorilla offers no excuse for his counsel's failure to have presented the issues now before the Court in the first petition. Thus, Zorilla has not shown cause for the failure to have raised his current claim in his first § 2255 petition. Because a petitioner is required to show both cause and prejudice, the failure to show cause is fatal to this petition.

### III.

■ Moreover, Zorilla has not shown "actual prejudice" from the error he alleges. As the Court of Appeals recently explained, "actual prejudice" requires, "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Femia*, 47 F.3d at 524 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)). Zorilla has not begun to show actual prejudice.

There is no basis to believe that the Zorilla's conviction was based on the Government's knowing use of perjured testimony. Indeed, as the Court of Appeals found in affirming his conviction, Zorilla's own testimony, corroborated by his incriminating tape-recorded conversation, supported the details of his participation in the drug conspiracy. The issue he disputed at trial was whether he knew the transaction involved narcotics. There is no basis to doubt the truthfulness of the trial testimony of the agents as corroborated by Zorilla himself.

While Zorilla argues that the Government violated its obligation under *Brady* and *Giglio* by failing to disclose the alleged wrongdoing of the agents who testified, those allegations first surfaced after the trial. The information Zorilla claims should have been disclosed relates to questions raised about the two agents, John McKenna and J. Erik Stangeby, members of Group 33, a DEA unit whose members were investigated as a result of certain improprieties identified in August 1990 by Judge Kenneth Conboy in *United States v. Lara*, 89 Cr. 1006 (S.D.N.Y. 1990). Agent McKenna himself testified in the *Lara* case, although Agent Stangeby did not. The Government indicates that it first became aware that reports or statements by DEA agents in the *Lara* case may have been false or inaccurate in late June 1990, approximately one month after Zorilla's trial concluded. The hearing at which Judge Conboy identified the improprieties in the *Lara* case was held on July 20, August 7, and August 8, 1990.

The Government also indicates the two agents were involved in a different case, *United States v. Carlos Reinoso*, S1 899 Cr. 629, where questions about the handling of a defendant's personal property were raised. (*See* Affirmation of James J. Benjamin, Jr., Esq. executed Dec. 8, 1995, ¶¶ 8–12.) These

questions arose as a result of an affidavit filed by Agent Stangeby in December 1990, and the United States Attorney's Office did not become aware of improprieties in the handling of the defendant's property in that case until May 1991. (*See* Benjamin Aff. ¶ 12.)

Zorilla's trial predates the questions regarding Group 33 in general and agents McKenna and Stangeby in particular with respect to the *Lara* case. Zorilla does not raise the *Reinoso* case, but the issues in that case also arose after Zorilla's trial. None of the allegations relating to the *Lara* and *Reinoso* cases concern any alleged improprieties in Zorilla's case. There is nothing to suggest that the Government was aware of any facts surrounding Group 33 or agents McKenna and Stangeby before or during Zorilla's trial, and there is no basis to conclude that the Government violated any of its obligations to disclose such information under *Brady* and *Giglio*. Under these circumstances, Zorilla's petition fails, as have similar challenges brought by prisoners who were tried prior to the revelation of Group 33's suspect activities. *See, e.g., Batista v. United States,* 94 Civ. 8292, 1995 WL 491487, at *3 (S.D.N.Y. Aug. 17, 1995); *Garcia v. United States,* Nos. S1 89 Cr. 629, 93 Civ. 5815, 94 Civ. 3931, 1995 WL 251574, at *2 (S.D.N.Y. Apr. 28, 1995); *Marte v. United States,* No. 94 Civ. 0629, 1994 WL 550708, at *1 (S.D.N.Y. Oct. 6, 1994); *United States v. Vega,* No. 90 Cr. 85, 1994 WL 324152, at *1 (S.D.N.Y. July 6, 1994); *Castillo v. United States,* No. 92 Civ. 3982, 1993 WL 51181, at *8 (S.D.N.Y. Feb. 23, 1993).

Indeed, Zorilla's petition is nearly identical to the § 2255 petition brought in *Almonte v. United States,* Nos. 93 Civ. 5750, 93 Civ. 0699, 1994 WL 202739 (S.D.N.Y. May 23, 1994) (Leval, J.). In that case, the petitioner brought two petitions for habeas corpus relief, and in the alternative made a motion for a new trial under Fed.R.Crim.P. 33, contending that the Government withheld vital information from him in violation of its disclosure obligations under *Brady*. The petitioner claimed that DEA agents John Welsh and John McKenna were members of Group 33, that Group 33 was under investigation for

improprieties, and that "the government wrongfully withheld from [Almonte] the existence of the investigation, information he could have used to undermine the credibility of these agents when they testified against him at trial." *Almonte,* 1994 WL 202739, at *2. The Court held this claim was meritless because Almonte's trial was held in December 1989 and he was sentenced in June 1990—all before the questions about Group 33 came to light. Therefore, the Court held "there was no investigation for the government to disclose to Almonte at trial." *Id.* The Court also noted that Almonte had brought an earlier habeas corpus petition, shortly after the publication of certain news accounts of the investigation into Group 33, and because Almonte provided no cause for his failure to raise the *Brady* claim in the earlier petition, the claim was barred under *McCleskey. See id.* Coincidentally, one of the newspaper reports relied on by Almonte was the August 18, 1991 Daily News article cited by Zorilla as a source of information about Group 33.

*Almonte* is factually indistinguishable from the present case. Zorilla's claim that the Government violated its disclosure obligations under *Brady* and *Giglio* fails because there is no evidence that any information with respect to agents McKenna and Stangeby and the investigation of Group 33 was known at the time of Zorilla's trial. Moreover, the evidence Zorilla relies upon consists of news accounts appearing after Zorilla's trial but before his first petition was filed. As was the case in *Almonte,* there is no cause for Zorilla's failure to raise the issue in his first habeas petition.

One difference between Zorilla's petition and the *Almonte* case is that the Government became aware of the Group 33 improprieties prior to Zorilla's sentencing. In *Almonte,* the petitioner had already been sentenced. But this difference is of no consequence. Had Zorilla raised the issue of the Group 33 improprieties prior to being sentenced, his claim would have been evaluated under the standard of Fed.R.Crim.P. 33, in other words whether the newly discovered information about Group 33 and the agents would probably lead to an acquittal. *See United States v. Spencer,* 4 F.3d 115, 118 (2d Cir.1993) (new trial on basis of newly discovered evidence

granted only in most extraordinary circumstances). As already explained, the evidence of Zorilla's guilt was powerful. Zorilla's own testimony corroborated the account given by agents McKenna and Stangeby, and the disclosures Zorilla would have received would not address his defense that he was unaware the transaction involved narcotics. A Rule 33 motion would not have been granted based on such newly discovered evidence. *See United States v. Sposato,* 446 F.2d 779, 781 (2d Cir.1971) (newly discovered evidence "which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify a new trial"); *cf. United States v. Reyes,* 49 F.3d 63, 69 (2d Cir.1995) (evidence of Group 33 agent's alleged perjury did not warrant new trial); *Romero v. United States,* 28 F.3d 267, 268–69 (2d Cir.1994) (Rule 33 motion based on newspaper article describing improper conduct of Group 33 agents who testified at petitioner's trial would not be successful).

Yet Zorilla does not face the standard of Rule 33 on this petition for habeas corpus. Indeed, it is not even a question of the merits of the alleged *Brady* and *Giglio* violation. Because this is Zorilla's second petition for habeas relief and his first petition did not assert this claim, Zorilla must make the far more demanding showing of actual prejudice. Zorilla must show that the alleged disclosure errors actually disadvantaged him and " 'infect[ed] his entire trial with error of constitutional dimensions.' " *Femia,* 47 F.3d at 524 (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596 (1982)). In the circumstances of this case, such a constitutional error cannot be found. The Government was unaware of the information about Group 33 and agents McKenna and Stangeby during Zorilla's trial, and, moreover, that information was wholly unrelated to the issues in that trial.[1]

Accordingly, Zorilla cannot demonstrate actual prejudice under *McCleskey* and his petition for a writ of habeas corpus based on claims not previously raised would be denied on that basis as well.

## IV.

■ Finally, this is not a case where an otherwise abusive petition should be granted to prevent a miscarriage of justice. Only in those cases where "a constitutional violation probably has caused the conviction of one innocent of the crime," *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470; *Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995), should a court review an otherwise barred claim for relief under § 2255. As the Court of Appeals explained on Zorilla's direct appeal:

> [T]he record clearly establishes Zorilla's knowledgeable participation in the conspiracy to sell cocaine. Zorilla admitted at trial that he relayed messages between [Rodriguez] and the drug supplier. Although Zorilla denied that he knew that the transactions involved narcotics, that denial is belied by his own testimony during cross-examination that he knew that [Rodriguez] was talking about drugs during the February 5th "deal" at the tire store. Given Zorilla's role in setting up the transactions, his incriminating tape-recorded conversations with [Rodriguez], the use of his tire store in the transactions, and his familiarity with the other co-conspirators, a jury could reasonably conclude that Zorilla knowingly participated in the cocaine conspiracy and that he aided and abetted in the substantive narcotics offense.

*United States v. Zorilla,* 930 F.2d 909 (2d Cir.1991). Nothing in Zorilla's submissions on this second petition for a writ of habeas corpus suggests that there is any reason for skepticism about the jury's determination in this case. Nor is there any evidence that Zorilla's conviction was based on perjured testimony. In fact, as indicated above, Zorilla himself testified and substantially confirmed the factual account of his crime as related by the DEA agents. This is not a case where a constitutional error has probably resulted in the imprisonment of an innocent person.

---

1. Zorilla also suggests that disclosure of the information regarding Group 33 and agents McKenna and Stangeby would have ameliorated his sentence. This argument is unavailing because the information in question does not relate in any way to sentencing or the factors considered in arriving at a sentence.

Accordingly, Zorilla's petition is an abuse of the writ and his claim for relief on the basis of the Government's failure to disclose the alleged misconduct of the DEA agents who testified against him is denied.[2]

## CONCLUSION

For all of the foregoing reasons, Zorilla's petition for a writ of habeas corpus under 28 U.S.C. § 2255 is **denied.**[3]  Additionally, there is no justification for discovery in this case, and Zorilla's request to conduct discovery is **denied.**

**SO ORDERED.**

---

**2.** In his original Memorandum, Zorilla also argued for a new trial pursuant to Fed.R.Crim.P. 33. In his Reply Memorandum, Zorilla expressly denies having brought such a motion. (*See* Pet.'s Reply Mem. at 4.) The petitioner is correct that any relief pursuant to Rule 33 is time-barred because the current petition was brought more than four years after the affirmance of his conviction. *See United States v. Reyes,* 49 F.3d 63, 65 (2d Cir.1995).

**3.** Because Zorilla's petition is denied, there is no occasion to consider whether there is any provision of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), that would otherwise bar Zorilla's requested relief.